IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-00166-01-CR-W-ODS |
| ) | |
| GIOVANI CRISOLIS-GONZALEZ, ) | |
| ) | |
| Defendant. ) | |

### ORDER (1) ADOPTING REPORT AND RECOMMENDATION (DOC. 68), AND (2) GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS (DOC. 59)

On December 20, 2011, the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri, issued her Report and Recommendation recommending that the Court deny Defendant's motion to suppress. Defendant has filed objections to the Report and Recommendation. The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

*(1) Consent to Enter Apartment*

Defendant first objects to Judge Hays' conclusion that law enforcement obtained valid consent to enter the apartment where Defendant eventually was located and arrested. Defendant argues the consent was invalid because the officers misrepresented the purpose of their presence. "Misrepresentations about the nature of an investigation may be evidence of coercion." *U.S. v. Turpin*, 707 F.2d 332, 334-35 (8th Cir. 1983).

Judge Hays found that Special Agents Jose Covarrubias of Homeland Security Investigations, along with three other special agents, assembled at the door of the

apartment to conduct a "knock and talk"[1] and attempt to locate Defendant.[2]  The door was opened by a man later identified as Mr. Reyes-Sevedra.  Special Agent Covarrubias asked if he and the other officers "could enter [Reyes-Sevedra's] apartment to talk to him," and Reyes-Sevedra agreed.

According to Defendant, Reyes-Sevedra's consent was invalid because Special Agent Covarrubias really wanted to speak with Defendant, not Reyes-Sevedra.  But there is nothing inconsistent with Special Agent Covarrubias' statement he wanted to speak with Reyes-Sevedra and his ultimate objective of locating Defendant in the apartment.  This was not a misrepresentation.

Defendant also contends Special Agent Covarrubias misrepresented the purpose of the officers' presence because he failed to disclose that they would be seeking consent to search the apartment.  But when Special Agent Covarrubias told Reyes-Sevedra that he wanted to speak with him, Reyes-Sevedra did not seek further elaboration.  And Special Agent Covarrubias testified that, if Reyes-Sevedra had asked him, he would have disclosed the officers' intent to search.  "The officers had a right to go about their duties 'without gratuitously advertising [their] every move to anyone [they] might encounter . . . .'"  *U.S. v. Briley*, 726 F.2d 1301, 1305 (8th Cir. 1984).  The Court concludes that Reyes-Sevedra voluntarily consented to allow the officers to enter the apartment.

---

[1] Judge Hays noted that a "knock and talk" is "an investigatory technique in which law enforcement officers approach the door of a dwelling seeking voluntary conversation and consent to search.  See United States v. Wise, 588 F.3d 531, 534 n.3 (8th Cir. 2009)."  Doc. 68, at 6 n.1.

[2] Officers knew Defendant had illegally entered the United States after previously being deported, and they had been informed he was trafficking methamphetamine and had been inquiring about ammunition.  A confidential informant had provided the address and apartment number where Defendant was residing, and Defendant's vehicle was parked at the apartment complex.

2

## (2) Protective Sweep

After entering the apartment, Special Agent Covarrubias asked Reyes-Savedra and Defendant's girlfriend who was present, Yuliet Lara, whether there were any other people were in the apartment. As Judge Hays found,

> [n]either Reyes-Savedra nor Lara responded. (Tr. at 53) Special Agent Covarrubias asked again if there was anyone else in the apartment. (Tr. at 53) Special Agent [Joseph] Stewart testified that Reyes-Savedra paused and turned slightly and looked down a hallway. (Tr. at 13) Special Agent Stewart took this to mean that he "knows there's something, but he doesn't want to say it." (Tr. at 13) Special Agent Covarrubias testified that Reyes-Savedra nodded his head like, yes, there was, but did not indicate where. (Tr. at 53)

The officers then conducted the search and located Defendant as well as another individual, Mr. Ocampo-Ocampo.

Judge Hays concluded the officers' search was valid as a "protective sweep." A protective sweep of premises is authorized "if the searching officer 'possesse[d] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]" the officer in believing' that the area swept harbored an individual posing a danger to the officer or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Based on Reyes-Sevedra's and Lara's ambiguous responses, and information that Defendant was dealing methamphetamine and may have a firearm, Judge Hays concluded *Buie* was satisfied.

Defendant contends *Buie* is distinguishable because the officers in his case did not enter the apartment with a warrant. But so long as the officers' presence is lawful, the reason for their presence is irrelevant, and in this case the officers' presence was lawful based on Reyes-Savedra's consent. Defendant also highlights that the officers had not been granted consent to search the premises, but consent is not necessary for a protective sweep under *Buie*. The Court agrees with Judge Hays' findings and her conclusion that the protective sweep was valid.

3

*(3) Pre-Miranda Statements*

The officers seated all the apartment occupants in the living room, and Special Agent Covarrubias asked each individual his or her name, where s/he was born, and what his or her status was in this country. In response, Defendant acknowledged that he was in the country illegally. Judge Hays concluded this admission should be suppressed, citing *U.S. v. Torres-Lona*, No. 06-CR-72-LRR, 2006 WL 3254538, at *11 (N.D. Iowa Nov. 9, 2006), *aff'd*, 491 F.3d 750 (8th Cir. 2007). *Torres-Lona* held that "*Miranda's* requirement applies to all custodial interrogations where criminal prosecutions could result, even if the interrogation is administrative in nature." *Id.* The Court agrees with Judge Hays that Defendant's admission he was in this country illegally must be suppressed.

Defendant argues his statement to officers that he possessed a gun should also be suppressed. But this statement was volunteered. Special Agent Covarrubias stated that the agents would like to do a consent search of the apartment, and Defendant asked what the agents were looking for. When Special Agent Covarrubias answered that they were looking for guns, among other things, Defendant turned back towards the hallway and stated that he had a gun under his mattress.

Defendant contends that the request for consent to search constituted an interrogation for purposes of *Miranda* because "it was likely that [he] would have blurted out incriminating information" in response to the request. But "a consent to search is not an incriminating statement." *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985) (citation omitted). "[T]herefore, a request to search does not amount to interrogation." *U.S. v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993) (citation omitted). Defendant's argument is rejected.

*(4) The Voluntariness of Defendant's Consent to Search*

After Defendant volunteered that he possessed a firearm, officers went back to his bedroom and ensured the gun was safe and not loaded. Special Agent Covarrubias

4

continued speaking with Defendant and the others about the consent search, and Defendant asked what would happen if he did not consent. Special Agent Covarrubias responded that they would attempt to apply for a search warrant. After a general consent search form was read to Defendant in Spanish, and after Defendant read the form himself, he signed it. Officers searched Defendant's bedroom and discovered methamphetamine, paraphernalia, the gun, and other items.

Defendant contends his consent was involuntary. The Court evaluates the voluntariness of Defendant's consent in light of the totality of the circumstances, which includes

> (1) [Defendant's] age; (2) his general intelligence and education; (3) whether he was intoxicated at the time; (4) whether he was informed of his *Miranda* rights before consenting; (5) whether any previous arrests would have informed him of his rights and protections; (6) the length of time he was detained; (7) whether the officers acted in a threatening manner; (8) whether the police made any promises or misrepresentations; (9) whether the police had [Defendant] in custody or under arrest at the time; (10) whether he consented in public; and (11) whether [Defendant] was silent during the search.

*U.S. v. Johnson*, 619 F.3d 910, 918 (8th Cir. 2010) (citation omitted).

At the time of the search of his room, Defendant was 26 years old. There was no evidence to suggest Defendant did not understand what was being requested of him. He was not under influence of alcohol or drugs, he relied on no promises or misrepresentations in giving consent, and he did not object to the search as it occurred. Defendant signed the consent form 15 minutes after the officers entered the apartment. Although Special Agent Covarrubias' gun was drawn and the officers' presence was announced loudly when the protective sweep was being conducted, his gun was holstered at the time consent was requested, and nothing indicates the officers were acting in a threatening manner at that time. In addition, Ocampo-Ocampo and Reyes-

5

Savedra both declined to give consent, which weighs against a finding of a coercive atmosphere.[3]

Defendant highlights that during the protective sweep he exited his bedroom with his hands above his head and that he was not free to leave at the time the request for consent occurred. He also notes he was in the apartment rather than out in public. But to succeed on this issue, Defendant would need to show his "'will [had] been overborne and his capacity for self-determination critically impaired,'" *U.S. v. Quintero*, 648 F.3d 660, 671 (8th Cir. 2011) (citation omitted). As Judge Hays noted, Defendant's abiltiy to intelligently consider his options was demonstrated by his question what would happen if he did not consent. The Court holds that the circumstances surrounding Defendant's consent establish it was freely and voluntarily given.

### *(5) Post*-Miranda *Statements*

Following the consent search of his bedroom, Defendant signed a Spanish *Miranda* Waiver form after it was read to him and agreed to speak with Special Agent Covarrubias without counsel, although he requested that the interview occur away from the apartment due to the presence of the other apartment occupants. Defendant was transported to the Platte County Jail where he was *Mirandized* again and signed another waiver form. Defendant spoke with Special Agent Covarrubias at length about the drugs and the scope of the conspiracy.

Judge Hays concluded Defendant's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. Defendant objects to this conclusion, arguing "[t]he statements made occurred only after all of the other violations occurred and thus should be suppressed." Because the Court has conducted its de novo review and determined there were no other violations, Defendant's argument is rejected. Defendant was fully

---

[3] Defendant asserts Ocampo-Ocampo and Reyes Savedra "were simply buying time, passing the buck on to their girlfriends with the hope the search wouldn't occur." But there is nothing in the record to support this assertion.

advised of his rights, he understood his rights, and he voluntarily and intentionally waived those rights and agreed to speak with Special Agent Covarrubias.

*Conclusion*

The Court adopts Judge Hays' Report and Recommendation. Defendant's motion to suppress is granted to the extent it seeks suppression of his acknowledgment that he was in this country illegally. The remainder of the motion is denied.
IT IS SO ORDERED.

DATE: January 10, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT